UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARAH RAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-00076-JPH-DML |
| | ) |
| WILLIAM GANNON, | ) |
| JOHN LAYTON, | ) |
| MADONNA EDGEMON, | ) |
| ERIN SMITH, | ) |
| LENA ANDERSON, | ) |
| KATHERINE COOPER, | ) |
| CORRECT CARE SOLUTIONS, | ) |
| DANIEL GABRESILASSIE, | ) |
| BRYAN BULLER, | ) |
| MEGAN ANDREWS, | ) |
| TERESA PIERCE, | ) |
| AMBER ALLEN, | ) |
| JAMIE MARBLE, | ) |
| LAQUETTA HUBBARD, | ) |
| CHERYL PETTY, | ) |
| BRIAN CARTER, | ) |
| CYRILENE JONES, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS
AND MOTION TO DISMISS**

Plaintiff, Sarah Rayne, alleges that Correct Care Solutions ("CCS"), a contract medical services provider for the Marion County Jail, along with several individual employees of CCS and the Marion County Sheriff's Office were deliberately indifferent to her medical needs. Dkt. 50. Before the Court and ripe for disposition are a motion for judgment on the pleadings, dkt. 62, and a motion to dismiss, dkt. 54. For the reasons below, the Court **GRANTS**

1

the motion to dismiss and **GRANTS in part** the motion for judgment on the pleadings.

# I.
# Factual Background and Procedural History

In deciding the motions, the Court accepts as true Plaintiff's account of how she was treated while in the custody of the Marion County Sheriff's Office. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A state trooper found Plaintiff crying on the side of the road with a red, swollen arm. Dkt. 50 ¶¶ 25-26. Plaintiff told the trooper that she was in pain and needed medical attention. *Id.* ¶ 27. Discovering an open warrant for Plaintiff's arrest based on a finding of probable cause, the trooper arrested Plaintiff and took her to the Arrest Processing Center ("APC") in Marion County. *Id.* ¶¶ 28, 31.

Plaintiff was held at the Marion County Sheriff's Office jail (the "jail") for a few days before being transferred to the Marion County Community Corrections Work Release program (the "Work Release Program"). *Id.* ¶¶ 32-33. While Plaintiff was at the jail, CCS—a private company that the Sheriff's Office has a contract with to provide medical treatment to inmates of the jail—was responsible for her medical care. *Id.* ¶¶ 11, 35. During this time, Plaintiff's arm was red, swollen, and about three times its normal size. *Id.* ¶¶ 26, 56, 61. From the start, Plaintiff informed the staff that she was in extreme pain. *Id.* ¶¶ 36-37.

On her first day in jail, Dr. Buller prescribed Plaintiff Bactrim for a urinary tract infection. *Id.* ¶ 38. The next day, a Medical History and Physical

Assessment was performed on Plaintiff and signed by Nurses Hubbard and Petty, indicating that Plaintiff continued to complain of pain in her harm and shoulder. *Id.* ¶¶ 40, 42. Nurse Gebresilassie saw Plaintiff that day, noted that she looked anxious and provided her the Bactrim. *Id.* ¶ 43. Plaintiff also saw Nurse Carter and told him she needed to go to the hospital, but he did not provide any treatment. *Id.* ¶ 44. Later, Nurse Allen was called to address Plaintiff's ongoing pain, and Nurse Allen provided her with Ibuprofen and scheduled an x-ray. *Id.* ¶ 45. After Plaintiff complained that the pain was so intense that she struggled to breathe, Nurse Pierce saw Plaintiff and told her to relax and take deep breaths. *Id.* ¶¶ 37, 46. Believing that her medical condition was being ignored, Plaintiff hit the medical emergency button in her cell. *Id.* ¶ 47. Deputy Edgemon responded and Plaintiff was placed on suicide watch. *Id.* ¶¶ 47, 48. Plaintiff began screaming that her arm was hurting, *id.* ¶ 49, so she was placed in suicide segregation, *id.* ¶ 51, where Deputy Cooper was the "sitter," *id.* ¶ 54.

On her third day in jail, Plaintiff continued to complain about her pain. *Id.* ¶ 57. She intentionally fell and injured her head in the hopes of getting further medical attention. *Id.* ¶¶ 57-58. Deputy Smith heard Plaintiff crying and called the medical staff. *Id.* ¶¶ 59-60. In response, Nurses Jones and Nurse Petty gave Plaintiff Ibuprofen for her head wound. *Id.* ¶ 60. During this time, Plaintiff "continuously talked about her shoulder being in pain," but the nurses were already aware of the problem and took no further action. *Id.* ¶ 59.

3

In total, Plaintiff was seen by at least six different nurses while in the jail, but her condition remained untreated and the x-ray was never performed. *Id.* ¶ 66. The next day, Plaintiff was sent to the Work Release Program. *Id.* ¶ 65.

Once she arrived at the Work Release Program, Plaintiff complained to the staff about her pain. *Id.* ¶ 68. They called 911, and Plaintiff was taken to the hospital where she was diagnosed with MRSA in her arm, shoulder, elbow, blood, lungs, and possibly her heart. *Id.* ¶¶ 68, 69. She spent weeks in the hospital and may have suffered permanent damage to her arm. *Id.* ¶¶ 71-72.

Plaintiff's Second Amended Complaint sues seventeen different defendants under 42 U.S.C. § 1983 for these injuries. Three of these defendants are law enforcement officers who worked at the jail ("Deputy Defendants"),[1] one is CCS, and ten are medical personnel ("Medical Defendants") who worked for CCS.[2] The other three defendants are William Gannon, John Layton, and Lena Anderson. They have not sought dismissal of any claims or joined in the pending motions. The Deputy Defendants have moved to dismiss Count II, dkt. 54; the Medical Defendants and CCS have moved to dismiss Counts III and V, dkt. 62. In those counts, Plaintiff alleges that: (1) the Deputy Defendants were deliberately indifferent to her medical needs (Count II), (2) the Medical Defendants were deliberately indifferent to her

---

[1] The Deputy Defendants are Katherine Cooper, Madonna Edgemon, and Erin Smith.
[2] The Medical Defendants are LaQuetta Hubbard (nurse), Daniel Gebresilassie (nurse), Bryan Buller (doctor), Teresa Pierce (nurse), Amber Allen (nurse), Jamie Marble (nurse), Cheryl Petty (nurse), Cyrilene Jones (nurse), Brian Carter (nurse), and Megan Andrews.

medical needs (Count III), and (3) CCS implemented a policy or custom that failed to protect her constitutional rights (Count V). Dkt. 50.

## II.
## Legal Standard

The Medical Defendants and CCS have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss, *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016), so the Court reviews both pending motions under the Rule 12(b)(6) standard.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially-plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true" but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616.

# III.
# Discussion

## A. The Motion for Judgment on the Pleadings

The Medical Defendants and CCS seek judgment on the pleadings with respect to the Section 1983 claims set forth in Counts III and V. Dkt. 50 ¶¶ 81-91 (Count III); 111-119 (Count V).

### 1. Deliberate indifference (Count III)

Plaintiff was arrested pursuant to a warrant based on a judicial finding of probable cause, *id.* ¶¶ 22-24, so the Fourteenth Amendment applies to her section 1983 claims. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) (holding that "due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause."). Claims brought by pretrial detainees challenging the conditions of their confinement under the Fourteenth Amendment are analyzed under the Eighth Amendment's prohibition against "cruel and unusual punishments." *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007).

Under the Eighth Amendment, prison officials must take reasonable measures to protect the safety of inmates, which includes providing them with adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). While prisoners are entitled to adequate medical care, they are "not entitled to demand specific care" or the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A two-step analysis is used to assess the sufficiency of a complaint alleging deliberate indifference regarding medical care. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016), as amended (Aug. 25, 2016).

First, the Court considers whether a plaintiff suffered from an objectively serious medical condition. *Id.* If so, the Court then determines whether the defendant was deliberately indifferent to that condition. *Id.*

As acknowledged by the Medical Defendants, Plaintiff's MRSA qualifies as an objectively-serious medical condition sufficiently serious to serve as the foundation of her claim. *See Myrick v. Anglin*, 496 F. App'x 670, 674 (7th Cir. 2012). Therefore, the Court proceeds directly to consideration of the second prong of the analysis: whether the Medical Defendants were deliberately indifferent to Plaintiff's condition.

To act with deliberate indifference, an official must have subjective knowledge of the risk to an inmate's health and then disregard that risk. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). For medical professionals, this means that treatment decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quotation marks omitted).

Delaying adequate medical treatment even for a few days for non-medical reasons may rise to the level of deliberate indifference. For example, in *Edwards v. Snyder*, 478 F.3d 827, 828 (7th Cir. 2007), the plaintiff dislocated his finger while playing basketball on New Year's Eve. The plaintiff was admitted to the infirmary, prescribed antibiotics, and given pain medication, but his injury was not adequately treated until his doctor returned to work two

7

days later.  *Id.* 829-30.  The Seventh Circuit reversed the lower court's order dismissing the case, holding that the plaintiff sufficiently alleged deliberate indifference due to his delay in receiving adequate medical treatment.  *Id.* at 830.

Here, Plaintiff has stated a claim for deliberate indifference against the Medical Defendants.  Between March 10 and March 13, Plaintiff's arm was swollen, red, and three times its normal size, dkt. 50 ¶¶ 26, 56, 61, and she frequently told the medical staff that she was in extreme pain and needed to go to the hospital,  dkt. 50 ¶¶ 36, 42, 44, 49, 57, 59.  In response, she was given antibiotics, Ibuprofen, and encouragement to take deep breaths and relax.  *Id.* ¶¶ 38, 45, 46, 60.  While she was under the care of multiple medical professionals at the jail, the level of examination into and treatment of her condition was minimal.  Upon being transferred to the Work Release Program, the staff called an ambulance for emergency treatment.  *Id.* ¶¶ 68-71.

The Medical Defendants contend that they were not aware of Plaintiff's condition.  Dkt. 63 at 9-15.  But the facts alleged in the complaint, assumed to be true at this stage, belie this assertion.  Most of the Medical Defendants met with Plaintiff in person and therefore would have seen that she had a red, swollen arm that was three times its normal size.  Dkt. 50 ¶¶ 43-46, 60.  These interactions should have alerted them to Plaintiff's medical condition.  While it is unclear whether Dr. Buller and Nurse Hubbard saw Plaintiff, Dr. Buller prescribed her Bactrim and Nurse Hubbard signed Plaintiff's physical assessment.  *Id.* ¶¶ 38, 40.  Further, Plaintiff alleges that she complained about

8

being in pain to the jail's "medical staff." *Id.* ¶ 36. When the Court construes the complaint in "the light most favorable to the nonmoving party" and draws "all inferences" in Plaintiff's favor, *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010), as amended (Dec. 16, 2010), Plaintiff has sufficiently alleged that the Medical Defendants—including Dr. Buller and Nurse Hubbard—were aware of her swollen arm and pain.

While the Medical Defendants may not have known Plaintiff had MRSA, she displayed and complained of serious, objective symptoms that required thorough physical examination and the exercise of medical judgment. Medical professionals cannot escape liability by simply deciding not to examine their patients. *See Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996) ("[T]he fact that a condition does not produce 'objective' symptoms does not entitle the medical staff to ignore it."). In total, Plaintiff's frequent complaints—along with her outward symptoms—could be found to be enough to put the Medical Defendants on notice that something was wrong with Plaintiff that required further physical examination and the exercise of informed medical judgment.

The Medical Defendants next argue that Plaintiff's complaint is really "a difference of opinion as to how a condition should be treated." Dkt. 63 at 10 (citing *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001)). While "a mere disagreement with a doctor's medical judgment" does not amount to deliberate indifference, *Greeno v. Daley*, 414 F.3d 645, 653–54 (7th Cir. 2005) (citing cases), treatment that is "so blatantly inappropriate" that it suggests

9

intentional mistreatment may constitute deliberate indifference, *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

Prison officials are required to provide care that is "adequate in light of the severity of the condition and professional norms." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citing cases). If they fail to provide this level of care, or delay in providing it, they may be held liable for acting with deliberate indifference to a patient's needs. *See McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (reversing a complaint's dismissal after finding that the delay in proper medical treatment sufficiently stated a claim for deliberate indifference).

Here, Medical Defendants provided Plaintiff with some medical care, but it could be found to not have been proportional to the severity of her symptoms and complaints. *Perez*, 792 F.3d at 777. While Plaintiff was provided medicine to treat a urinary tract infection, given Ibuprofen, and told to "relax," dkt. 50 ¶¶ 38, 45, 46, 60, these measures could be determined to have been "blatantly inappropriate" in response to the symptoms. Plaintiff has sufficiently stated a claim of deliberate indifference against LaQuetta Hubbard, Daniel Gebresilassie, Bryan Buller, Teresa Pierce, Amber Allen, Jamie Marble, Cheryl Petty, Cyrilene Jones, and Brian Carter, so the claim in Count II will proceed against these individuals.

Plaintiff's claim against Defendant Megan Andrews, however, must be addressed separately. Plaintiff only alleges that Ms. Andrews is a "Mental Health supervisor" who "electronically signed a suicide watch initial assessment for Ms. Rayne." *Id.* ¶ 53. Unlike the other Medical Defendants,

10

Plaintiff does not allege that Ms. Andrews is a nurse, doctor, or has any medical training. As non-medical staff, Ms. Andrews was not "in a position to take corrective action" to provide Plaintiff with the medical care she needed. *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) (affirming dismissal of non-medical defendants who deferred to medical professionals while holding that the plaintiff properly stated a claim against medical defendants). Therefore, Plaintiff has failed to state a claim for deliberate indifference against Ms. Andrews.

2. *Monell* **claim (Count V)**

Count V is a claim against CCS under 42 U.S.C. § 1983. While municipalities and entities that contract with municipalities can be held liable under section 1983, they cannot be held liable under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to be liable under section 1983, the entity must have "an express policy that, when enforced, causes a constitutional deprivation . . . ." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

Here, Plaintiff claims that the independent actions of various Medical Defendants support the inference that "there is a custom, policy, or practice within CCS to delay treatment of inmates scheduled to be incarcerated for a short period of time." Dkt. 66 at 16. Aside from "implementing a policy or custom that failed to protect Ms. Rayne's constitutional rights," Plaintiff also claims that CCS allowed "a culture of indifference" and "tolerance of employees'

unlawful actions," and failed to adequately train its employees. *Id.* at 15. The allegations in the complaint fail to state a *Monell* claim under Section 1983.

Plaintiff's allegation that "CCS implemented a policy or custom that failed to protect [her] rights," dkt. 50 ¶ 114, is a boilerplate recitation of the elements of the offense unsupported by facts and therefore not accept as true. *Sivard v. Pulaski Cty.*, 17 F.3d 185, 188 (7th Cir. 1994); *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) ("we need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'"). Plaintiff's argument that the Court should infer the existence of a CCS policy based on the actions of the individual Medical Defendants in this case has the analysis backwards. If Plaintiff had sufficiently alleged the existence of a custom or policy, then the Court could infer that the employees acted in accordance with that policy. But the Court will not infer the existence of a policy based solely on the conduct of a few employees with respect to one patient over a period of several days. To do so "would be tantamount to allowing suit to be filed on a *respondeat superior* basis." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985).

To state a *Monell* claim, Plaintiff must allege facts suggesting "the policies of which [she] complains actually exist." *Id.* at 767. These facts must exist "apart from the fact of employment." *Id.* at 768. Here, Plaintiff has alleged no facts suggesting that CCS had a policy of deliberate delay that caused her injuries. Her complaint alleges that the Medical Defendants were employed by

12

CCS but fails to state a claim that CCS had a policy or custom that caused her injuries.

Plaintiff's claim that CCS "allowed a culture of indifference" and tolerated unlawful conduct also falls short of what's required. To state a *Monell* claim based on allowing unlawful conduct, a plaintiff must allege that the defendant was aware of the misbehavior of its employees. For example, in *Latuszkin v. City of Chicago*, 250 F.3d 502, 503 (7th Cir. 2001), a group of Chicago police officers engaged in a raucous party with heavy drinking. When one of the police officers killed a pedestrian while driving intoxicated, the pedestrian's estate sued Chicago under section 1983. *Id.* The Seventh Circuit affirmed dismissal of the complaint because the plaintiff did "not allege any facts tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." *Id.* at 505. Here too, Plaintiff's complaint fails to allege any facts showing that CCS policy makers were aware of the facts surrounding her medical condition and requests for treatment at the jail or that similar occurrences were commonplace at CCS.

Plaintiff's final theory to support a *Monell* claim alleges that CCS failed to adequately train its personnel. Under some circumstances, an entity's decision not to train employees about their legal duties may rise to the level of an official policy under section 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But Plaintiff has not alleged sufficient facts to support the claim that CCS's training procedures rose to an official policy of inadequate training. The complaint has

no facts about how Medical Defendants were trained, why that training was deficient, and how that training caused her injuries. Without these allegations, Plaintiff has failed to state a claim for deliberate indifference. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (dismissing failure to train claim after the plaintiff failed "to cite to any legal authority or present any evidence" that the defendant did not properly train its employees). In addition, Plaintiff has not alleged that CCS had notice that the Medical Defendants were inadequately trained, so it cannot be held liable for training the Medical Defendants as it did. *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Because Plaintiff has failed to sufficiently allege that a CCS policy or custom caused her injuries, she has failed to state a *Monell* claim against CCS.

**B.     Motion to Dismiss (Count II)**

The Court now turns to the motion to dismiss Plaintiff's claim of deliberate indifference against Deputies Katherine Cooper, Madonna Edgemon, and Erin Smith. As with her claim against the Medical Defendants, to succeed in her claim of deliberate indifference against the Deputy Defendants, Plaintiff must establish that she suffered from an objectively-serious medical condition and that the Deputy Defendants acted with deliberate indifference to that condition. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Again, the parties do not dispute that the condition here was objectively serious.

14

The Deputy Defendants assert that they cannot be found to have been deliberately indifferent because they did not know that Plaintiff suffered from a serious medical condition. They contend that Plaintiff did not exhibit physical symptoms sufficient for a lay person to know that she needed medical attention. Dkt. 55 at 4. But when Plaintiff interacted with the various Deputy Defendants, her arm was three times its normal size, swollen, and red. Dkt. 50 ¶¶ 26, 56, 61. Deputy Cooper was informed about Plaintiff's shoulder pain, *id.* ¶ 55, and Deputy Smith heard Plaintiff crying and noted that Plaintiff "continuously talked about her shoulder being in pain," *id.* ¶ 59. Deputy Edgemon witnessed Plaintiff "screaming that her arm was hurting." *Id.* ¶¶ 47-49. These facts sufficiently allege that the Deputy Defendants were aware that Plaintiff had a serious medical condition.

While Plaintiff has sufficiently alleged that the Deputy Defendants knew she had a serious medical condition, the Deputy Defendants could only be found to have been deliberately indifferent if they intentionally disregarded that condition. *Johnson*, 433 F.3d at 1010. When making this determination, the Court does not hold the Deputy Defendants to the same standard as the Medical Defendants. Non-medical professionals are "entitled to defer to the judgment of jail health professionals" so long as they do not ignore a prisoner. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). To hold a "prison official liable in a case where a prisoner was under a physician's care would strain [the] division of labor" between medical experts and non-medical prison employees. *Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218,

236 (3d Cir. 2004)). When non-medical prison officials make sure that medical care is made available to prisoners when needed, they can then reasonably rely on the expertise of these medical professionals without incurring liability. *Doughty*, 433 F.3d at 1011 (granting summary judgment on deliberate indifference claim in favor of a warden).

Here, the Deputy Defendants reasonably relied on the CCS medical professionals who were responsible for Plaintiff's medical care at the jail. After Plaintiff hit the emergency medical button in her cell, Deputy Edgemon responded and helped put Plaintiff in suicide segregation. Dkt. 50 ¶¶ 47-51. Later, Deputy Smith responded to Plaintiff's cries and called the medical staff. *Id.* ¶¶ 59-60. While Deputy Cooper did not seek any immediate medical treatment for Plaintiff, Deputy Cooper was informed about Plaintiff's shoulder and arm pain and was only charged with monitoring Plaintiff while she was on suicide watch. *Id.* ¶¶ 53-55. The facts alleged do not support the conclusion that the Deputy Defendants ignored Plaintiff's medical needs. To the contrary, the facts show that the Deputy Defendants notified CCS personnel about Plaintiff's condition and complaints and knew that CCS medical personnel saw Plaintiff in response. From these facts, the Deputy Defendants had reason to believe that Plaintiff was getting the care she needed.

Plaintiff argues that because the Deputy Defendants witnessed Plaintiff continue to complain about her pain, they should have concluded that she was not receiving the substantive treatment she needed. Dkt. 60 at 6. But when a prisoner is sent to medical professionals for treatment "a non-medical prison

16

official will generally be justified in believing that the prisoner is in capable hands." *Jones v. Drew*, 221 F. App'x 450, 454 (7th Cir. 2007) (citing cases). Indeed, the law encourages non-medical personnel "to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry*, 604 F.3d at 440. Moreover, there is little else the Deputy Defendants could have done. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("failure to tell the medical staff how to do its job cannot be called deliberate indifference."). Plaintiff has failed to state a claim against the Deputy Defendants.

## IV.
## Conclusion

The Court **GRANTS** in part and **DENIES** in part the motion for judgment on the pleadings. Dkt [62]. Defendants Megan Andrews and Correct Care Solutions are **DISMISSED** from the case along with **Count V** of the Second Amended Complaint. The Court **GRANTS** the motion to dismiss and **DISMISSES** Katherine Cooper, Madonna Edgemon, and Erin Smith from the case along with **Count II**. Dkt. [54].

**SO ORDERED.**
Date: 4/17/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Scott Leroy Barnhart
ATTORNEY AT LAW
barnhart@kbindy.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Tara Lynn Gerber
City of Indianapolis
tara.gerber@indy.gov

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov

Brooke Smith
KEFFER BARNHART LLP
Smith@KBindy.com